LOUIS A. COQUARD

*v.*

THE NATIONAL LINSEED OIL COMPANY.

*Opinion filed February 14, 1898.*

1. CORPORATIONS—*stockholder seeking aid of equity to enforce his right to examine books must show a denial of such right.* Equity will not interfere to aid a stockholder in enforcing his right to examine corporate books and records, in the absence of anything in his bill to show that there has ever been any denial or abridgment of his rights in that regard or any refusal to give him information.

2. SAME—*stockholder cannot have corporate franchise forfeited on the ground that corporation is a trust.* A stockholder in a corporation can not enforce a forfeiture of its franchise on the ground that it is a

trust and doing an unlawful business, as the State, only, can complain of the injury to the public or enforce such forfeiture.

3. SAME—*stockholder must be free from participation in illegality of which he complains.* A stockholder asking that the corporation of which he is a member be wound up and its assets distributed for alleged illegal transactions must be free from participation in the illegality of which he complains, and his acquiescence therein or long delay in acting will prevent him from obtaining relief.

4. SAME—*equity has no general power to appoint receivers and decree dissolution.* Courts of equity cannot appoint receivers for corporations except when expressly authorized by statute; nor, in the absence of statutory authority, have they any jurisdiction to dissolve corporations by decreeing forfeiture of their franchises.

5. SAME—*party asking for dissolution, and appointment of a receiver, must bring himself within the statute.* The whole power of a court of equity to appoint receivers for and decree dissolution of corporations is derived from section 25 of the act on corporations, (Laws of 1877, p. 66,) and one not bringing himself within the provisions of that section is not entitled to relief.

6. SAME—*when equity will not enjoin issue of bonds.* Equity will not enjoin the exercise of the discretion of the board of directors of a corporation in issuing bonds, where the only averment in the bill relative thereto is that the president, in a report two years before, stated that the issue had been determined upon, and that the bonds would not increase the indebtedness or the fixed or interest charges of the corporation, but would give the management working capital to retire short-time paper.

7. SAME—*to enjoin dividend it must appear that corporation is insolvent or that it will impair capital.* Equity will not enjoin the payment of a dividend where the only allegation that the corporation is insolvent or that the dividend will impair the capital is by way of argument, based upon the alleged invalid character of the corporation and the consequent invalidity of its credits and bills receivable, and its inability to collect them at law.

8. SAME—*stockholders may authorize payment of compensation to parties who endorse corporation paper.* Equity will not enjoin the payment of compensation to parties endorsing paper of the corporation, in the absence of any showing that such payment had not been authorized by a majority of the stockholders, as might legally be done.

*Coquard* v. *National Linseed Oil Co.* 67 Ill. App. 20, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

171—31

FRANKLIN A. McCONAUGHY, for plaintiff in error.

WILLIAM W. GURLEY, and HORACE G. STONE, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This suit was commenced on January 14, 1896, against defendant in error, by plaintiff in error, one of its stockholders, and his amended bill was filed May 25, 1896, in which he prayed for a complete discovery of the affairs and condition of the corporation; that it and its officers should be enjoined from interfering with him in the exercise of his right to examine the books of the corporation, and from negotiating a proposed loan, or declaring or paying any further dividends, and from paying any further sums as compensation to endorsers for signing its paper, and that a receiver should be appointed and the corporation wound up and its assets distributed according to law. A demurrer to the bill was sustained and the bill was dismissed. Plaintiff in error appealed to the Appellate Court for the First District, where the decree was affirmed.

Complainant had a right, at all reasonable times, by himself or his attorney, to examine the records and books of account of the defendant as a stockholder, (Rev. Stat. chap. 32, sec. 13,) and that right he might enforce by *mandamus*. (*Stone* v. *Kellogg*, 165 Ill. 192; Cook on Stock and Stockholders, sec. 513.) So far as the prayer of the bill that defendant should be enjoined from interfering with him in the exercise of that right, and that he should have a discovery of the affairs and condition of the company, is concerned, the bill does not show that there has ever been any denial or abridgment of his rights in that respect or any refusal to give him such information. If he can have any right to invoke the powers of a court of equity to obtain access to the books, he has not

shown that its intervention is necessary. There is a very lengthy exhibit annexed to the bill, purporting to be the report of an auditing committee appointed at a meeting of the stockholders, giving the opinions and experience of that committee in an investigation of the affairs of the corporation, and stating the condition, with respect to printing and disclosing the information, upon which the officers of the corporation would permit access to the books by that committee, but no statement contained in that report is either stated or pleaded in the bill and none of its contents are alleged to be true. The bill is insufficient even to show that the committee was denied access to the books or full information, and complainant, so far as appears, has never asked to inspect the books or to exercise his right of examination as a stockholder. For aught that is alleged in the bill, he could at any time acquire full information as to the affairs of defendant without resorting to a court of equity.

The ground for asking that the corporation shall be wound up and its assets distributed seems to be, that it is a trust formed in violation of law and that it is not doing a lawful business. The allegations on that subject are, in substance, that the National Linseed Oil Trust was formed by articles of agreement in January, 1887; that defendant was incorporated under the name of "Enterprise Transit and Storage Company," May 24, 1887; that its name was changed to the present title of "National Linseed Oil Company," July 14, 1887; that the purpose of the corporation was to manage and succeed the National Linseed Oil Trust; that complainant became a stockholder June 15, 1889, by the purchase of one hundred and fifty shares of stock, and subsequently bought one hundred and fifty other shares, paying for his stock forty-six cents on the dollar; that the capital stock was increased February 18, 1890, to $18,000,000, and that a large number of linseed oil mills were purchased and paid for with said increased stock. There are also a great many aver-

ments that the corporation is a trust, and the argument
in support of the bill contains a great deal about the in-
validity of trusts and the purpose of the managers of the
defendant. About the only fact, however, averred in the
bill which might constitute a part of the facts necessary
to show a trust is, that the defendant has acquired a
great many oil mills and plants and is managing a large
business. The facts pleaded are insufficient to show the
existence of a trust, but if they met the requirements in
that regard, yet, so far as the public right is concerned
which is the subject of so much argument, that fact would
not authorize the filing of the bill by complainant for the
forfeiture of the charter. Only the State can complain of
injury to the public or that public rights are being inter-
fered with, and enforce a forfeiture of defendant's fran-
chise for that reason. (Cook on Stock and Stockholders,
sec. 632; *Baker* v. *Admr. of Backus*, 32 Ill. 79; *People* v. *North
Chicago Railway Co.* 88 id. 537.) So far as any individual
interest of complainant that might be affected by un-
lawful acts is concerned, if we admit the allegations suf-
ficient to show a trust, the bill merely shows him as a
stockholder and participant in an illegal combination.
That is no ground for giving him relief. He has been a
stockholder since June 15, 1889, and, for aught that ap-
pears, participated in the alleged illegal acts of which
he complains, in respect to the acquirement of linseed
oil mills and the trust character of the business done.
From that time he has had, so far as appears, full knowl-
edge of the occurrences which he recites, at the time they
took place. As a stockholder he presumably had such
knowledge, and his participation or *laches* of many years
would, either of them, bar him from obtaining relief on
his own account. The general rule is, that a complain-
ant must be free from participation in the illegality or
wrong of which he complains, and his acquiescence and
long delay will prevent him from taking personal ad-
vantage of their invalidity. (Cook on Stock and Stock-

holders, sec. 729.) Courts of chancery have no general power to appoint receivers of corporations and can only appoint them where expressly authorized by the statute. In the absence of statutory authority they have no jurisdiction to decree the dissolution of a corporation by decreeing a forfeiture of its franchise. (*Wheeler* v. *Pullman Iron and Steel Co.* 143 Ill. 197; *Chicago Steel Works* v. *Illinois Steel Co.* 153 id. 9; *People* v. *Weigley*, 155 id. 491.) The whole power of a court of equity in such cases is derived from section 25, chapter 32, of the Revised Statutes. Complainant did not bring himself within any provision of that section, and is not entitled to the appointment of a receiver or dissolution of the corporation.

The loan which complainant asked to have enjoined was an issue of debenture bonds to the amount of $3,000,000, and the averment of the bill about them is, that the president, in his report of February 14, 1894, stated that the issue had been determined upon, and that the bonds would not increase the indebtedness nor the fixed charges or interest charges upon the corporation, but would give the management working capital and enable it to retire short-time maturing paper. Nothing more is said about the bonds in the bill, and that report was about two years before this suit was commenced. For aught that we can see from the bill, the bonds were either issued years ago or their proposed issue long since abandoned; and if this were not so, the statement of the bill is clearly insufficient to call for the interference of the court to prevent an exercise of discretion by the board of directors or to protect the right of complainant.

It is alleged in the bill that on August 20, 1895, complainant casually learned that a dividend was contemplated, and on that day delivered to each of the officers and directors his letter of protest, but notwithstanding such protest they were proceeding, when the bill was filed, to pay the dividend and threatening to declare further dividends. The statute prohibits the payment of any

dividend when a corporation is insolvent or when such payment would diminish the amount of its capital stock. (Rev. Stat. chap. 32, sec. 19.) If such an act should be threatened, complainant would have a right to enjoin it and to prevent the distribution of any part of the capital stock in the form of a dividend. (Cook on Stock and Stockholders, sec. 546.) But the bill does not aver, except as a matter of argument, based on the alleged illegal character of the defendant corporation and the consequent invalidity of its credits and bills receivable and its inability to collect them by law, that the corporation is insolvent or that a dividend would impair the capital. The statements of the bill in that regard are insufficient.

The payment of one-tenth of one per cent as compensation to persons who endorse the paper of the corporation is also sought to be enjoined, but the bill is defective in not showing that such compensation has not been authorized by the stockholders. A majority of the stockholders have a right to control the management of the corporation, and the courts will not interfere with such management unless some wrong is being done or there is some fraudulent management of affairs to the detriment of the stockholders. It would not be improper or illegal to pay such compensation as would be reasonable or as is ordinarily charged for becoming security and assuming liability for the corporation. If it needed such services and aid, the payment would rather be presumed to be lawful and authorized by the stockholders than unlawful and unauthorized, in the absence of any allegation to that effect.

The bill is very lengthy, but we have noticed all the material allegations and all the grounds for relief for which complainant prays, and think that the demurrer was properly sustained and the bill dismissed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*