People ex rel. John E. Cassidy, Attorney General, Appellee, v. James Karban and Company, Inc., Appellee. James L. Preisler, Appellant.

Gen. No. 41,312.

Opinion filed November 26, 1940.

J. H. Silver and S. F. Brown, both of Chicago, for appellant.

James J. Hajek, of Cicero, for certain appellee.

John E. Cassidy, Attorney General, for certain other appellee; John E. Johnson, Assistant Attorney General, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

Appeal by James L. Preisler, intervening petitioner, from an order denying his motion to vacate an order that vacated a decree dissolving James Karban & Co., a corporation.

The Attorney General filed an information under section 82 of the Corporations Act (Ill. Rev. St. 1933, ch. 32, par. 82, sec. 82) for dissolution of James Karban & Company, a corporation. The information alleged that the corporation had failed to file its annual reports as required by statute, had failed to pay the franchise tax assessed against it as provided by statute, had discontinued the exercise of all corporate functions, and had abandoned its corporate franchise and charter. The sheriff made the following return upon the summons issued: "The within named defendant, a corporation, not found in my County nor can I find any officer or any agent of said corporation in my County . . . ." Thereupon the Attorney General proceeded to obtain service by publication. Upon June 15, 1935, no appearance nor answer having been filed by defendant, an order defaulting defendant was entered. The decree finds, *inter alia,* that defendant has failed, neglected and refused to file its annual report as required by statute and has failed, neglected and refused to pay the franchise tax assessed against it as is provided for by statute; that defendant has ceased to do business as a corporation in this State, has discontinued the exercise of all corporate functions and has abandoned its corporate franchise and charter, and decrees that "defendant corporation be, and the same is hereby dissolved and that the charter and authority of said corporation be, and the same is hereby declared to be null and void and of no force and effect whatsoever . . . ."

Upon November 28, 1939, Joseph Linhart filed in the cause a verified petition, which recites:

". . . he is a shareholder and the duly elected chairman of the Board of Directors of the defendant

corporation in the above entitled cause and represents unto this Honorable Court:

"1. . . .

"2. On November 2, 1939, he was apprised for the first time of the entry of the decree of June 15, 1935, and therefore is in the exercise of all due diligence in presenting this petition setting forth the following facts.

"3. . . . [This paragraph refers to section 84 of the Corporations act (Ill. Rev. Stat. 1933, chap. 32, par. 84, sec. 84) that provides for the method in which summons shall be served upon a corporation in a proceeding by the Attorney General to dissolve the corporation.]

"4. At all times from the commencement of the proceedings to dissolve the Corporation to and including the date of the return by the Sheriff . . . , March 13, 1935, James Karban, president, and James L. Preissler, office manager, and Otto F. Ring, secretary of said corporation, were in the County of Cook . . . and could have been found by said Sheriff and also during said entire period an agent of defendant was located at the principal office of defendant in Cook County . . . and could have been found by said Sheriff.

"5. . . . said Sheriff, without making any effort to find the President, Clerk, Secretary, Superintendent or other agent of said defendant in Cook County, Illinois, made the following return endorsed on said summons: [Here follows the return of the sheriff.] After said return . . . an attempt to give notice of this proceeding by publication and by mail was made.

"6. The defendant has never been served with summons in this proceeding, and said attempt to give notice of this proceeding by publication and by mail after said return . . . was not in compliance with the statutes . . . then in force, and did not constitute notice to the defendant of this proceeding.

"7. That the defendant corporation has continued to operate as a corporation ever since prior to the entry of said decree, has called shareholders' meetings, has elected officers and directors and has filed Annual Corporate Income Tax Returns with the Internal Revenue Department of the United States each year, including a Return for the year 1938.

"8. That there are over eighty shareholders of this corporation who have invested over $250,000 in the shares of this corporation who will be greatly prejudiced if the order of dissolution is not vacated and set aside.

"9. That your petitioner tenders herewith taxes due the State . . . for the year 1934 and represents that he will direct his efforts immediately upon the vacating of said decree for dissolution to calling a shareholders' meeting as well as a meeting of the Board of Directors . . . and set about the preparation and filing of annual reports for said corporation, and paying the annual franchise and other taxes for said corporation for all years intervening since the entry of said decree for dissolution.

". . . prays that the said return of the Sheriff, said publication notice and said decree of dissolution entered herein on June 15, 1935, be vacated and set aside and that said complaint to dissolve the James Karban & Company, Inc., a corporation, be dismissed and that your petitioner may have such other and further relief as equity may require.

"Joseph Linhart
"Chairman of the Board of Directors
of James Karban & Company, Inc. a Corp."

Upon November 28, 1939, the same date, the following order was entered in the cause:

"This cause coming on to be heard on the motion of the defendant for the entry of an order vacating the decree of dissolution entered herein on the 15th day of June 1935, and it appearing to the Court that the

plaintiff had due notice hereof in accordance with the rules of the court, and the court having jurisdiction of the subject matters and parties thereto and the plaintiff having appeared before the court by its counsel and the court having examined the files in this cause and heard the testimony of Joseph Linhart, Chairman of the Board of Directors of the defendant corporation and the statements of counsel, and being fully advised in the premises, finds:

"1. That the statutes . . . in force at the time this proceeding was commenced and during the entire time subsequent up to the date of entry of decree herein relating to dissolutions of corporations provided that summons shall issue directed to the Sheriff of the County in which principal office in the State of Illinois as shown by the records in the Office of the Secretary of State of Illinois is located, which summons shall be served by delivering a copy thereof to the President of said Corporation if he can be found in such County, and if he cannot be found therein then by leaving such copy with the Clerk, Secretary, Superintendent or other agent of said corporation, and in case the Sheriff shall make a return thereon that such President, Clerk, Secretary, Superintendent or other agent of said corporation cannot be found in his County then the Attorney General of Illinois shall cause publication to be made as provided in said statutes.

"2. At all times from the commencement of the proceedings to dissolve the Corporation to and including the date of the return by the Sheriff of Cook County, Illinois herein to-wit March 13, 1935, James Karban, president and James L. Preissler, office manager, and Otto F. Ring, Secretary of said corporation, were in the County of Cook and State of Illinois and could have been found by said Sheriff and also during said entire period an agent of the defendant was located at the principal office of the defendant in Cook County, Illinois, and could have been found by said Sheriff, if

said Sheriff exercised a diligent effort to obtain personal service, he could have done so.

"That upon a return by said Sheriff, notice by publication of the pendency of the above entitled cause was obtained.

"4. The defendant has never been served with summons in this proceeding, and said attempt to give notice of this proceeding by publication and by mail after said return of said Sheriff was not in compliance with the statutes . . . then in force, and did not constitute notice to the defendant of this proceeding.

"5. That the defendant has paid its franchise taxes for the year 1934, has filed its annual reports for all years since its incorporation to and including 1934 as required by the laws of the State . . . , and has represented to the court that immediately upon the vacating of said decree for dissolution the petitioner, Joseph Linehart, will call a shareholders' meeting as well as a meeting of the Board of Directors of said corporation and set about the preparation and the filing of annual reports for said corporation and pay the annual franchise and other taxes for said corporation due the State . . . for all years intervening since the entry of said decree for dissolution.

"Now, Therefore, It Is Ordered that said decree of dissolution entered herein on June 15, 1935, be and the same hereby is vacated and set aside and held for naught nunc pro tunc as of June 15, 1935.

"It Is Further Ordered that said cause stand continued for ninety days, that is to say, until February 26, 1940, without further notice."

Upon December 29, 1939, James L. Preisler (appellant), upon leave of court, filed a verified petition, in substance as follows:

". . . that he is a stockholder of James Karban & Company, Inc., . . . .

". . . [This paragraph recites the entry of the decree of dissolution and the entry of the order upon the petition of Joseph Linhart.]

". . . that said corporation did receive by mail, a copy of the summons of the dissolution proceedings, but no steps were made to reinstate the corporation and to pay any franchise tax, because it would not be in line with the course of conduct planned by the stockholders of said corporation, who intended to liquidate said corporation, and since 1934, gave James Karban, President of said corporation, full power to take any and all steps to liquidate said corporation, and make a distribution of the assets to the creditors and stockholders of the said corporation; that the non-payment of said franchise tax was done wilfully and deliberately, under the authority of all the directors of the corporation, and, therefore, Joseph Linhart, petitioner, had actual notice of the fact that the corporation was to be liquidated with the full consent of all the stockholders and directors and, therefore, did not act diligently on the proposition of having said corporation reinstated.

". . . that at various meetings of the stockholders, it was decided that the corporation could not function profitably because of conditions, as from an examination of the minutes of the various meetings of the corporation, will more fully appear.

". . . that Joseph Linhart is a brother of James J. Linhart, who was the original owner of two notes of the corporation, and that said notes were assigned to James J. Linhart for the purpose of enforcing the payment thereof; that . . . judgments were entered on said notes on March 7, 1939, for the purpose of obtaining a preference over all other creditors and stockholders of the corporation, and for said purpose, a creditor's bill was filed in the Circuit Court of Cook County, Illinois, in case entitled, 'James J. Linhart vs. James Karban & Company, Inc., a corporation, et al.', No. 39 C 6244.

". . . that in order to maintain said proceedings and to make their judgments good and valid, and for

the purpose of securing a preference over and ahead all creditors . . . Joseph Linhart presented his petition offering to pay and did pay one year's franchise tax and obligated the corporation for the payment of franchise taxes for the years 1936, 1937, 1938 and 1939, to the impairment of the assets of the corporation, and to the further impairment of the rights of the creditors and stockholders of the corporation, . . . so that an equitable distribution could not be made of the assets of said corporation, in line with plans heretofore made and approved by all directors and stockholders, as aforesaid.

". . . charges . . . that said action by Joseph Linhart was without the sanction and authority of the stockholders and directors of the corporation . . . [and] were for the sole purpose of preferring the said judgments, hereinabove referred to, over other creditors who had good and valid claims against said corporation; that said action . . . of Joseph Linhart, was contrary to the intentions of the stockholders and directors . . . ; that the liabilities of the corporation are far in excess of the assets, and the creditors will sustain a substantial loss, and that the obligation of the corporation to pay franchise taxes will further impair the claims of said creditors and the rights of the stockholders; that it is for the best interests of the creditors and stockholders of the corporation, to have the corporation stand dissolved as of the date of the entry of the Decree of Dissolution.

"Wherefore, your petitioner prays that the order vacating the Decree of Dissolution, be vacated and set aside."

Upon January 9, 1940, the People, by the Attorney General, filed an answer to the petition of said Preisler, which contains, *inter alia,* the following:

"And for a further defense the Respondent answering says that the petitioner has no right or authority to question the order vacating or setting aside the De-

cree of Dissolution . . . because that right or authority to question the existence of a corporation is vested only in the office granted by Statute to The Attorney General of The State of Illinois on behalf of The People of The State of Illinois.

"Your respondent further answering says that in paragraph 3 of the petition, he alleges that the non-payment of said franchise taxes was done wilfully and deliberately, yet the petitioner is attempting to avail himself of the rights and privileges granted under the corporate act of The State of Illinois, when said corporation wilfully and deliberately attempted to evade the payment of this tax.

"And for a further defense the respondent answering says that he has received as part payment of the franchise taxes which is owed and due The State of Illinois, a certified check made payable to Edward J. Hughes, Secretary of State, in the sum of $200 to apply on account, and your respondent is of the opinion that if the order to vacate the Decree of Dissolution is permitted to remain in full force and effect, that it will receive the balance of the monies owed and due by James Karban & Company, Inc., a corporation."

Joseph J. Linhart filed a verified answer to the petition of Preisler, in which he denies the charges made by Preisler and states that Preisler filed a sworn petition in Case No. 39C 6244 in the circuit court (creditors' bill entitled *James J. Linhart v. James Karban & Company, Inc., et al.,* seeking to restore certain assets alleged to have been taken from the corporation), in which he stated that he first learned on October 20, 1939, that a decree of dissolution of the corporation had been entered; that Preisler has been for a number of years closely associated with the president of the corporation and has been active in the management and manipulation of its affairs, and was one of the defendants in said creditors' bill; that James J. Karban, the other defendant in that suit, in a verified

petition filed in Case No. 2783422 in the municipal court of Chicago asking for an order to vacate the judgment in that case, on which said creditors' bill is based, stated that he, Karban, on October 20, 1939, learned for the first time that the dissolution decree had been entered; that from the date of the filing of the creditors' bill, on or about July 3, 1939, to October 31, 1939, various hearings were had and that at no time during said period was mention made, in any way, of the dissolution of the corporation; "that neither the directors nor the stockholders had any knowledge of the dissolution and that while the question of dissolution was discussed and power to liquidate with certain proviso given to James Karban, president, the liquidation was never undertaken nor the power used, and that no dissolution was ever undertaken as provided in Sections 74, 75, 76 of the Business Corporation Act of the State of Illinois;" that if the corporation had notice of the dissolution proceedings, that "petitioner and/or James Karban . . . wilfully and fraudulently concealed that fact from this respondent and from the other directors and stockholders of the corporation and, as charged in the Creditor's Bill, have taken over the assets of the corporation and are manipulating same for their own personal gain and advantage and have wilfully refused to attend all directors' meetings called by this respondent as Chairman of the Board of Directors; that this respondent, further answering, states that he had no knowledge that the franchise taxes were not being paid, and therefore, cannot be charged with lack of diligence in reinstating the corporation;" states that no action was ever taken to liquidate the corporation; "denies that the sole purpose of filing the Creditor's Bill was to obtain a preference over other creditors and stockholders, but on the contrary says it was for his advantage as well as that of the other creditors and the shareholders of . . . [the] corporation, and that in . . . 1936 and 1937

one of the principal defendants to said Creditor's Bill . . . began operation of Karban Construction Company for the purpose of building homes, and Mortgage Service Company for the purpose of dealing in mortgage securities, and gave the directors and stockholders of James Karban & Company the understanding that the profits from these enterprises would accrue to the benefit of, and that these enterprises were part of James Karban & Company, . . . and that upon filing of [said] Creditor's Bill . . . James Karban and James L. Preisler . . . filed their answer to said Creditor's Bill, a portion of which reads as follows: 'These defendants state the fact to be that Karban Construction Company, Emankay Properties and Mortgage Service Company are co-partnerships and are no subterfuges for James Karban and Company, and that Karban Construction Company, Emankay Properties and Mortgage Service Company, are not individually and collectively James Karban and Company, Inc. . . .; deny that they individually or trading as Karban Construction Company, Emankay Properties and Mortgage Service Company, have anything in their possession or control belonging to James Karban & Company, beneficially or otherwise.' " Respondent, "further answering, says that Karban Construction Company and Mortgage Service Company are profitable enterprises, while James Karban & Company, Inc., is not profitable, and that the purpose of filing the Creditor's Bill is to determine and judicially declare that Karban Construction Company and Mortgage Service Company are in fact and in law James Karban & Company, and thus to procure for the creditors and stockholders a means of sustaining their claims against James Karban & Company, the contention that these enterprises are James Karban & Company, Inc., a corporation is substantiated by the profit and loss Statements, Balance Sheets, Federal Income Tax Returns of James Karban & Company, Inc., for

the year 1938 and prior years.'' Respondent, Linhart, admits that he paid one year's franchise taxes, and states ''that the judgment creditor and plaintiff in Creditor's Bill . . . has obligated himself to pay the franchise taxes for the years 1935 to 1939, both inclusive, out of any money acquired from said Creditor's Bill, and that several of the stockholders and directors have voluntarily consented to payment of the franchise taxes, from profits realized, out of the continuance of the business of the corporation, or out of the assets of the corporation on liquidation.'' Respondent further ''states that vacation of the order reinstating James Karban & Company as a corporation will work great hardship on the stockholders and creditors of James Karban & Company, in that James Karban and James Preisler will be permitted to hold all of the assets of said corporation and it may never be properly liquidated,'' and that since the decree of dissolution was entered nothing has been done to liquidate the assets of the corporation; ''that no intention to dissolve was ever filed as required by law; that the stockholders were never notified of any dissolution of said corporation, and that this petitioner has no standing in this court to attack this action as he does not purport to represent the corporation or its shareholders,'' and respondent prays that petitioner's petition be denied for want of equity, etc.

Upon February 28, 1940, Judge GROVER C. NIEMEYER entered an order denying the petition of Preisler to vacate the order vacating the dissolution decree. Appellant appeals from that order. No report of proceedings appears in the record.

A number of points are argued in this court, but in our view of this appeal the only point we need consider is the one made by the Attorney General in his answer to appellant's petition, ''that the petitioner has no right or authority to question the order vacating or setting aside the Decree of Dissolution . . .

because that right or authority to question the existence of a corporation is vested only in the office granted by Statute to The Attorney General of The State of Illinois on behalf of The People . . . ." The able trial judge who passed upon the motion of appellant undoubtedly was of the opinion that this point was a meritorious one. Under section 82, *supra,* no one but the Attorney General could file an information to dissolve a corporation. "It is for the State alone to complain of any mis-user or non-user of the powers conferred in the creation of the corporation. *Coquard v. National Linseed Oil Co.,* 171 Ill. 480, and cases there cited." (*Lincoln Park Chap. R. A. M. v. Swatek,* 204 Ill. 228, 232.) "And the government creating the corporation can *alone* institute such a proceeding, since it may waive a broken condition of a compact made with it as well as an individual." (*Baker v. Administrator of Backus,* 32 Ill. 79, 110.) "The attorney-general was not bound to proceed at law, if at all, against the appellant, by quo warranto proceedings to forfeit its charter. It may frequently better serve the public interest to restrain a corporation from exceeding its powers in an unlawful direction, than to punish it by penal remedies, or to forfeit its charter, and the attorney general may · elect which course he will take." (*Chicago Fair Grounds Ass'n v. People,* 60 Ill. App. 488, 496.) "Only the State can complain of injury to the public or that public rights are being interfered with, and enforce a forfeiture of defendant's franchise for that reason. [Cases cited.]" (*Coquard v. National Linseed Oil Co., supra,* 171 Ill. 480, 484.) "Where a corporation, by the exercise of powers not conferred by its charter, does no private injury, and commits an offense against the public alone, the State may punish or waive the right to do so, as in the judgment of those entrusted with the appropriate power in that respect may be deemed most in consonance with the public interest. If a wrong

is done by the abuse of a franchise, it is a public wrong, and a proceeding by *quo warranto* must be by the public prosecutor or other authorized agent of the State; and a private citizen can not, in such case, have the aid of this extraordinary remedy. High on Extraordinary Remedies, sec. 654, and cases cited; Angell & Ames on Corp. sec. 736; *Murphy v. Farmers' Bank,* 20 Pa. St. 415.'' (*People ex rel. Jones v. North Chicago Ry. Co.,* 88 Ill. 537, 544.)

From the record it appears that the order vacating the order of dissolution of the corporation was entered with the consent of the Attorney General. Appellant argues that Joseph Linhart had no authority from the corporation to make the motion to vacate the dissolution order. The Attorney General did not question the right of Linhart to represent the corporation, and if the Attorney General was of the opinion that justice required that the order of dissolution be vacated, he had the undoubted power to consent to the entry of the order vacating the order of dissolution. Indeed, the Attorney General, in a case like the instant one, might of his own motion have had the dissolution order vacated if facts came to his knowledge that showed that the dissolution order should not have been entered. The order vacating the order of dissolution recites that the court heard testimony ''and the statements of counsel,'' and it must be presumed from the order in question that the trial court and the Attorney General were satisfied that ''Joseph Linhart, Chairman of the Board of Directors of the defendant corporation,'' had authority to represent the corporation in the matter of the motion. Appellant insists that the corporation is dissolved notwithstanding the order vacating the dissolution order. Then what authority has he, ''a stockholder in the corporation,'' to now intervene in this cause and ask, in effect, that the corporation be held to be dissolved? It is the settled law of this State that in a proceeding like the instant

one only the State can insist upon a forfeiture of the franchise of the corporation. The position of appellant is a most unusual one. He alleges that Linhart had ulterior motives in filing his motion to vacate; that the effect of the order vacating the dissolution order was to impair the assets of the corporation by making it liable for franchise taxes, and perhaps other claims, and that the creditors and stockholders would be injured thereby. While such matters could not be litigated in the instant proceedings, they may all be determined in appropriate actions.

Appellees contend that although all of the charges contained in the petition of appellant were denied in the answer of Joseph J. Linhart, appellant offered no proof to sustain said charges. While this contention of appellees is very strenuously urged, we deem it entirely unnecessary, in the view we have taken of this appeal, to consider the same.

The order of the superior court of Cook county is affirmed.

*Order affirmed.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.